F. Reginald Dimond *vs.* Daniel A. Marwell.

APRIL 28, 1941.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Condon, J.   This action of assumpsit was tried before a justice of the superior court sitting without a jury and is here on the defendant's exceptions to the decision of the trial justice in favor of the plaintiff.

According to the evidence, defendant ordered plaintiff, who is in the securities business, to buy for him 1000 shares of Maryland Casualty Company preferred stock, but no

written order therefor was signed by defendant and given to the plaintiff. On September 20, 1934, plaintiff bought 100 shares of the order, and on October 8, 1934, at the urging of the defendant, he bought the remaining 900 shares. Plaintiff billed defendant by way of a memorandum in writing showing the details of each purchase soon after it was made. The stock certificates for both purchases were retained by plaintiff in street form, awaiting payment therefor by defendant. Plaintiff segregated them from other securities in his office by marking them with a pencil as the property of the defendant.

On December 21, 1934, defendant not having made payment, plaintiff notified him that unless payment was made on or before December 29, 1934, his stock would be sold. On that date the stock was sold and the transaction showed a loss of over $655.40. Plaintiff thereupon brought suit and claimed this sum was due him from defendant.

Before suit was brought defendant never told plaintiff that he did not owe plaintiff for the stock. On the contrary, defendant indicated to the plaintiff at least twice after the stock was bought that, as soon as he was able to realize some money on a certain parcel of real estate which he was expecting to sell, he would take up the stock certificates. He knew the stock had been purchased for him; and he never denied that he had ordered plaintiff to buy said stock for him.

However, at the conclusion of the evidence, defendant set up the defense of the statute of frauds. He contended that the alleged order for the purchase of the stock, being in the amount of $500 and upwards, was unenforceable because it was not in writing and signed by him, in accordance with general laws 1938, chapter 459, § 4. He admitted that if the relationship of broker and customer, that is, one of agency, existed between him and plaintiff, the statute would not apply and the order need not be in writing and signed by him. The evidence, he argues, shows that the relationship

was that of dealer and customer rather than that of broker and customer. The trial justice, however, found on the evidence that it was the latter and therefore refused to apply the statute.

The evidence on this point is in conflict. The memoranda of the purchases for defendant in compliance with the alleged order, which are exhibits in the case, bear a stenciled statement that the plaintiff acted as principal and not as agent.

Although there was such a statement, certain items disclosing the nature of the transaction as set forth tended to show, however, in the memorandum of purchase of the 900 shares that the relation was one of broker and customer and that plaintiff really acted as agent. Plaintiff testified that the stenciled statement was placed on that memorandum by mistake, due to unfamiliarity with the requirements of the Federal Securities Exchange Act then but recently enacted. The trial justice apparently believed this explanation and resolved the inconsistencies in the memorandum in favor of the plaintiff's contention that the order of the defendant for the purchase of 1000 shares of the stock was indivisible and gave rise to the relation of broker and customer, notwithstanding the manner in which it was executed. Under these circumstances, and bearing in mind that the trial justice had the advantage of observing the parties on the witness stand while they were testifying, we cannot say that he was clearly wrong in making such finding.

Defendant's main defense on the merits appears to be that the agreement on his part to purchase these shares of stock was conditional and not absolute. He testified that he did not give plaintiff an outright, unconditional order to buy such shares at the market for his, defendant's, account but that he told plaintiff he would purchase the stock when and if a certain real estate transaction was consummated and proved profitable, as he expected it would. He testified

further that he understood the plaintiff had purchased the 1000 shares with this condition in mind.

In support of this supposed understanding, he testified that, before the shares were purchased, plaintiff had met him at the site of the parcel of real estate which defendant expected to sell; that he explained to plaintiff why he expected to make a substantial profit by such sale; and that plaintiff understood that his, defendant's, intention to purchase the stock in question was dependent upon such sale. Defendant further testified that, after the stock had been purchased, he consulted the plaintiff about a prospect he, the defendant, had of buying the Metropolitan Theatre in Providence, and turning it over at a profit, in which event he would be able to purchase the stock from plaintiff. It seems also, according to the testimony of the defendant, that neither of these great expectations materialized and, because they did not materialize, he was not in a position to purchase the stock in accordance with his understanding of the agreement which he had with the plaintiff who, he supposed, also understood it that way.

Plaintiff testified positively that there was no such understanding as testified to by defendant, although he admitted that the latter had talked to him about the real estate matter concerning which defendant had testified. On the contrary, plaintiff further testified that the defendant had given him an order to buy for his, defendant's, account 1000 shares of Maryland Casualty Company preferred at the market; that he advised defendant not to buy so much at once, as it might affect the price adversely to him; that he, the plaintiff, acting on this suggestion, as he believed in the best interest of the defendant, bought only 100 shares at first; that upon billing him for this purchase, defendant wanted to know why the full order of 1000 shares had not been bought and that he urged plaintiff to purchase the balance of 900 shares at the market; that acting on such positive instructions he,

the plaintiff, made the purchase on the Baltimore Exchange through a Baltimore broker, charged the whole transaction to the defendant and earmarked the actual certificates of stock with defendant's initials.

In substantiation of this testimony, plaintiff testified further that when he became aware that defendant was not going to take up his stock, he did not know how to proceed to protect himself, as he had never extended credit in this way before; that he took the advice of a New York stock exchange house in Providence, which advised him how he should proceed to realize on defendant's stock, while, at the same time, continuing to hold defendant liable for any deficiency.

Whether defendant's order to plaintiff to purchase these shares was conditional or absolute reduces itself fundamentally to a question of credibility. In this instance it was for the trial justice to decide between the testimony of the defendant and that of the plaintiff; and the trial justice decided for the plaintiff. From our examination of the record, it appears to us that there is substantial support for the trial justice's decision; and, in any event, we cannot say that his decision was clearly wrong.

As a final defense defendant contended that, on the evidence, the alleged order to purchase was with a copartnership; that the copartnership had executed the order; that it had suffered the resulting loss; and that it was claiming compensation for damages, whereas the writ showed that the plaintiff as an individual had brought the suit.

The trial justice held that the plaintiff, individually, was not the proper party plaintiff, but, on the motion of the plaintiff, he permitted plaintiff's copartners, suing as copartners, to be added as parties plaintiff, in accordance with the provisions of G. L. 1938, chap. 518, § 3. Defendant contends that this was error. The above statute has always

been liberally construed by this court to save litigation from the adverse effect of nonjoinder or misjoinder of parties. Where no injustice could result to the opposite party, an amendment adding new parties has been freely allowed. In view of such liberality and the obvious absence of any resulting injustice to the defendant here, we are of the opinion that in this instance the trial justice did not err in granting plaintiff's motion.

The defendant's exceptions to the decision of the trial justice are overruled on all grounds advanced by the defendant, and the case is remitted to the superior court for entry of judgment on the decision.

*Charles H. Eden,* for plaintiff.

*Edward M. Sullivan, John J. Sullivan,* for defendant.